UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODIS COLLINS,

                        Plaintiff,                    CASE NUMBER: 09-12897
                                                  HONORABLE VICTORIA A. ROBERTS

v.

MARINERS INN, CITY OF DETROIT,
and MONICA CONYERS,

                        Defendants,

And

CITY OF DETROIT,

       Cross-claim Plaintiff,

v.

MARINERS INN,

       Cross-claim Defendant.

_____/

## ORDER

## I.    INTRODUCTION

This matter is before the Court on Defendant Monica Conyers' Motion for Summary Judgment (Doc. 84), Defendant City of Detroit's Motion for Summary Judgment (Doc. 85), and Defendant Mariners Inn's Motion for Summary Judgment (Doc. 86).

The Motions are GRANTED in part and DENIED in part.

## II.    Background

Plaintiff was employed as a substance abuse counselor by Mariners Inn, a non-profit, substance abuse facility funded, in part, by federal grants administered by the City of Detroit.  Mariners Inn provides both residential and outpatient treatment to homeless men trying to overcome substance abuse.  Plaintiff worked at Mariners Inn from April 2006 until May 2009.  He provided individual and group therapy to recovering substance abusers.  This suit arises from Plaintiff's termination from his employment at Mariner's Inn after filing a petition to recall public official Monica Conyers from office.

On April 24, 2009, Plaintiff filed a petition to recall Monica Conyers from her position as President of the Detroit City Council.  That same day, Plaintiff was notified that the Wayne County Election Commission scheduled a meeting for May 5, 2009 to "determine the clarity of reasons as set forth in the recall petitions . . . ."

On the day of the meeting, Plaintiff went to work as scheduled.  Around the middle of the day, he signed out of work, and took a group of approximately eight Mariners Inn clients and an intern with him to the Coleman A. Young Municipal building for the meeting.  They were driven there in a Mariners Inn van by another employee. The clients and intern observed the meeting from the audience.  Plaintiff, while wearing his Mariners Inn work badge, spoke at the meeting.  Afterwards, Plaintiff and his clients returned to Mariners Inn.

Later that same day, Plaintiff's supervisor Saunteel Jenkins and Chief Operating Officer David Sampson questioned Plaintiff about the meeting, and reported Plaintiff's activities to Jim Hartz, Chief Executive Officer of Mariners Inn.  The next day, May 6, 2009, Hartz fired Plaintiff and wrote a letter on behalf of Mariners Inn to Conyers.  The

letter informed Conyers that Plaintiff did not represent Mariners Inn, that Mariners Inn had a policy of neutrality regarding political candidates, and that Hartz "acted quickly and decisively to deal with the employee's inappropriate behavior."

Plaintiff claims that Conyers contacted Mariners Inn and demanded his termination in exchange for her support for future grant money from the City because she was displeased that Plaintiff was seeking to recall her.  Plaintiff says he was fired in retaliation for exercising his First Amendment rights.

On July 22, 2009, Plaintiff filed suit against Mariners Inn, the City of Detroit, and Monica Conyers, alleging (1) violation of the Whistleblower Protection Act (WPA), (against all Defendants); (2) retaliation for exercising his First Amendment rights in violation of § 1983, (against all Defendants); (3) violation of § 1985 (against Mariners Inn and the City); (4) tortious interference with an advantageous business relationship (against the City and Conyers); and (5) wrongful termination in violation of public policy (against all Defendants).

## III.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant

meets this burden, the nonmoving party must show a genuine issue for trial.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate.  *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV.    Law & Analysis

### A. Michigan Whistleblower Protection Act

The Michigan WPA states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action.

MCL § 15.362.

"The main purpose of the WPA 'is to alleviate the inability to combat corruption or criminally irresponsible behavior in the conduct of government or large businesses.'" *McBrayer v. Detroit Medical Center,* 2010 WL 5175458 at *2 (Mich. Ct. App. Dec. 21, 2010) (quoting *Shallal v. Catholic Soc. Serv. of Wayne Co.,* 455 Mich. 604, 612 (1997)). It "is a remedial statute and is liberally construed, favoring the persons the Legislature

intended to benefit." *Id.*(citing *Chandler v. Dowell Schlumberger, Inc.,* 456 Mich. 395, 398 (1998)).

WPA claims are analyzed under the burden-shifting framework used in Michigan Civil Rights Act retaliatory discharge actions. *Id.* To establish a prima facie case under the WPA, "a plaintiff must show that (1) the plaintiff was engaged in a protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *West v. General Motors Corp.,* 469 Mich. 177, 471-72 (2003). Once a plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the adverse action. *Roulston v. Tendercare (Michigan), Inc.,* 239 Mich. App. 270, 281 (2000). "If the defendant produces evidence establishing the existence of a legitimate reason for the discharge, the plaintiff must have an opportunity to prove that the legitimate reason offered by the defendant was not the true reason, but was only a pretext for the discharge." *Id.*

### 1. Mariners Inn

Defendant Mariners Inn says Plaintiff cannot establish a prima facie case under the WPA because: (a) Plaintiff did not engage in any protected activity, and (b) Plaintiff cannot show a causal connection between the protected activity and his termination.

### a. Protected Activity

A protected activity under the WPA includes reporting a violation, or a suspected violation, of law, regulation, or rule to a public body. *See* MCL 15.362. Mariners Inn says Plaintiff did not engage in a protected activity because "Plaintiff did not report a

violation of law or regulation, and it is unreasonable to believe that the alleged

'violations' he claims to have reported could have possibly been violations of any law or

regulations." Mariners Inn Br. 8.

On April 24, 2009, Plaintiff submitted a petition for the recall of Monica Conyers,

which stated:

> Monica Conyers is in violation of standards of conduct in ethical behavior
> of a public servant as cited in the provisions of section 2-106 of the City
> Charter and Provisions of Detroit City Code Sections 2-6-1 et seq.  It is the
> responsibility of City Counsel President to maintain order and decorum
> (6.3.4) City Charter. City Counsel President must set example of conduct
> when representing the city and not bring disgrace or embarrassment upon
> the city.

The provisions cited by Plaintiff in this petition include:

Section 2-106 of the Charter of the City of Detroit:

> Standards of Conduct
> The use of public office for private gain is prohibited.  The city council shall
> implement this prohibition by ordinance, consistent with state law.  The
> ordinance shall contain appropriate penalties for violations of its
> provisions.  The ordinance shall provide for the reasonable disclosure of
> substantial financial interests held by any elective officer, appointee, or
> employee who regularly exercises significant authority over the solicitation,
> negotiation, approval, amendment, performance or renewal of city
> contracts, and in real property which is the subject of a governmental
> decision by the city or any agency of the city.  The ordinance shall prohibit
> actions by elective officers, appointees, or employees which create the
> appearance of impropriety.

Section 2-6-1 of the City Code:

> Statement of Purpose
> Public service is a public trust.  A position of public trust should never be
> used for private gain as defined in section 2-6-3 of this Code.  In order to
> promote public confidence in public servants, to preserve the integrity of
> city government, and to establish clear disclosure requirements and
> standards of conduct for all public servants of the City of Detroit, the City
> of Detroit enacts this article which shall be liberally construed so as to
> avoid even the appearance of impropriety by its public servants so that the

public interest is protected.

Detroit City Council Rule 6.3.4:

> The President shall preserve order and decorum and may speak on points of order during Formal Sessions. The President shall decide questions of order, with the aid and assistance of the Parliamentarian, subject to an appeal to the Council. Such appeal must be made and seconded, and on which appeal no member shall speak more than once except by consensus of the members present.

And, although not cited specifically by Plaintiff in his petition, Plaintiff points to Detroit

City Council Rules 16.3-16.5:

> 16.3 Addressing Colleagues: Council Members shall address each other, through the Chair, with respect and will not direct negative comments or gestures towards other Council Members.

> 16.4 Refrain from Outbursts: Council Members will avoid public verbal, non-verbal or physical reactions while other members are speaking, regardless of whether the public reaction is in support of or in opposition to a colleague's point of view.

> 16.5 Maintaining Respect for Colleagues: Chairs shall maintain impartiality and treat all colleagues with the respect that is due the position of a Detroit City Council Member.

Plaintiff believes that Conyers' behavior, both in and out of council meetings, violated these rules. Plaintiff says Conyers was disrespectful of young people who were critical of her behavior; she "went off" on employees at a hotel in Florida; she called Ken Cockrel "Shrek" during a city council meeting; she "twist[ed] her behind" and said, "Do your job, do your job, do your job" during a city council meeting; and she talked over the city council President during a city council meeting, although he asked her to be quiet. Pl. Dep. 76-78. Plaintiff says this behavior created the appearance of impropriety and "directly violated the city council's rules of order and decorum in that they show negative comments or gestures directed towards other members and lack of respect for

colleagues." Pl. Resp. Br. to Mariners Inn 4.

Mariners Inn says Plaintiff could not reasonably believe these actions, if true, violated any law or regulation. Mariners Inn relies on *Demaagd v. City of Southfield,* 2006 WL 2312086 (Mich. Ct. App. Aug. 10, 2006) for the proposition that a suspicion of a violation must be reasonable to qualify as protected activity under the WPA. The Court disagrees with Mariners Inn's interpretation of this case.

In *Demaagd,* the Michigan Appeals Court examined whether the WPA requires a whistleblower's report to be reasonable in order for WPA protection to apply. The court stated the WPA "does not contain an explicit reasonableness requirement, but rather clearly states that the only potentially applicable exception is 'unless the employee knows that the report is false.'" *Id.* at *3. However, the court concluded the WPA has an underlying good faith requirement for a report to qualify as a protected activity. The court indicated that "[a] whistleblower plaintiff cannot make a wholly unfounded or unreasonable assertion that there has been or will be a violation of the law without running afoul of the WPA's underlying good faith requirement." *Id.* Mariners Inn claims that this is exactly what Plaintiff did.

Mariners Inn contends that many of the rules Plaintiff cited in his recall petition explicitly prohibit only the use of public office for private gain. Mariners Inn says Plaintiff could not reasonably believe the behavior he pointed out amounted to Conyers using her office for private gain.

However, the rules that Plaintiff cites are broader than Mariners Inn contends; they also address maintaining order and decorum during meetings. Additionally, Plaintiff says Conyers' behavior also violates city rules prohibiting displays of disrespect

for other council members.  Although it is unclear whether Conyers' alleged behavior actually violates these rules, it is not unreasonable to suspect that it did.  Calling another council member a name during a council meeting might very well be a disrespectful or negative comment, which disrupts decorum and order.  There is no evidence that Plaintiff acted in bad faith, or that Plaintiff's suspicion that these rules were violated by Conyers was wholly unfounded or unreasonable.

Mariners Inn also says that Plaintiff's petition is not protected activity because he did not "report," or blow the whistle on anything–"Plaintiff was merely publicly repeating information that had been in the news for months." Mariners Inn Br. 10.  However, the requirement that the conduct reported be previously unknown to the public is not in the plain language of the statute and is not an element of a WPA claim as outlined by Michigan courts.

Moreover, the case on which Mariners Inn relies, again *Demaagd,* does not support the proposition that reporting a suspected violation of law is not a protected activity if it was already reported by another or the illegal conduct is known to the public. Instead, the *Demaagd* court held the plaintiff in that case failed to report anything because he failed to tell anyone of the suspected violation.

In *Demaagd,* the plaintiff, an employee for the city of Southfield, sued the city under the WPA alleging he was discharged for reporting that the city might violate its own charter by hiring a certain candidate as city administrator.  To report the suspected violation, the plaintiff gave newspaper articles which indicated the candidate the city was considering hiring had prior convictions to members of the city administration.  The plaintiff said that he did so because the city's charter prohibited hiring persons with

felony convictions.  However, the plaintiff did not communicate his concern that hiring this candidate would violate the city's charter.  Instead, the plaintiff merely handed city administrators the articles without any explanation or discussion of the city's charter.  Because of this, the court ruled the plaintiff did not actually report his suspicion that hiring the candidate would violate a rule or regulation.

Here, the Court is faced with the opposite situation; Plaintiff's petition clearly stated several rules he believed Conyers violated, but he did not identify the specific conduct he believed resulted in the violations.  However, as Mariners Inn points out, this conduct was public knowledge.  Thus, the Court finds *Demaagd* inapposite, and Mariners Inn presents no other case law to support its position.

The Court finds Plaintiff engaged in protected activity under the WPA by filing the recall petition.  Therefore, it is not necessary for the Court to determine whether Plaintiff engaged in a seperate protected activity by attending and speaking at the meeting.

### b.  Good Faith Motivation

Mariners Inn says that even if Plaintiff's actions would normally qualify as a protected activity under the WPA, Plaintiff acted for personal reasons, not the greater public good.

It is true that "[t]he primary motivation of an employee pursuing a whistleblower claim must be a desire to inform the public on matters of public concern, and not personal vindictiveness."  *Shallal v. Catholic Soc. Serv. Of Wayne Cnty,* 455 Mich. 604, 621 (1997) (internal quotes omitted).  However, there is no evidence that Plaintiff acted out of personal vindictiveness.

Mariners Inn points to Plaintiff's deposition; when asked why he filed the petition,

Plaintiff answered, "I wanted to get my–my feelings on record, what I felt about it." While this does suggest that Plaintiff acted, at least in part, for personal reasons, it does not suggest the vindictiveness discussed in *Shallal, where* it was "clear that plaintiff used her own situation to extort defendant not to fire her."  455 Mich. at 622.

Furthermore, when asked as a follow-up question what his feelings were, Plaintiff stated: "Well, I felt that she was being a disgrace to the city and the city had already suffered enough.  And I believe that a recall was in order and that we should have a hearing about it."  This suggests Plaintiff was motivated, in part, by a desire to inform the public of matters of public concern.   A reasonable juror could conclude Plaintiff filed the recall petition "out of an altruistic motive of protecting the public." *Shallal,* 455 Mich. at 622.  Mariners Inn's argument is without merit.

### c.  Causal Connection

 Mariners Inn says there is no causal connection between the protected activity and Plaintiff's termination because Mariners Inn's legitimate, non-discriminatory reason for discharging Plaintiff prevents Plaintiff from showing a causal connection.  Mariners Inn misinterprets the law.

A plaintiff must show a prima facie case under the WPA, including a causal connection.  This creates an inference that the adverse employment action was retaliation for engaging in the protected activity. Then, an employer may rebut this inference by articulating a legitimate, non-discriminatory reason for the adverse action. *See, e.g., Roulston,* 239 Mich. App. at 281.  An employee is not precluded from establishing a causal connection to make out a prima facie case merely because an employer comes forth with a legitimate, non-discriminatory reason for the discharge.

Moreover, Plaintiff provides sufficient evidence to establish a causal connection. On April 24, 2009, Plaintiff filed the recall petition.  On May 5, 2009, Plaintiff participated in a public meeting before the Wayne County Elections Commission regarding his petition.  Later that very day, Plaintiff was questioned by his supervisor regarding his participation in the meeting, and Mariners Inn learned for the first time that Plaintiff filed the recall petition.  The next day, Plaintiff was fired.  Plaintiff's termination letter drafted by Hartz on behalf of Mariners Inn stated: "After reviewing the facts of your personal testimony before the Wayne County Election Commission on Tuesday, May 5, 2009, your actions which were on Mariners Inn time, place Mariners Inn at risk.  It is with regret that based upon your behavior and it's [sic] potentially negative consequences to Mariners Inn, I must sever our employment relationship."  Under these facts, a reasonable juror could find that Mariners Inn fired Plaintiff in retaliation for filing the recall petition.

### d. Pretext

Because Plaintiff establishes a prima facie case, Mariners Inn must produce a legitimate, non-discriminatory reason for the discharge.  Mariners Inn says Plaintiff was not fired for attempting to recall Conyers, but because Plaintiff attended to "personal business" on Mariners Inn's time, with Mariners Inn's clients, and using Mariners Inn's resources.  According to Mariners Inn, "in the middle of a working day, and without informing his supervisors, Plaintiff left his employer's place of business with up to eight of its clients in the employer's van." Mariners Inn Br. at 12.  Thus, Mariners Inn articulates a legitimate, non-discriminatory reason for firing Plaintiff.

To proceed, Plaintiff must show that the legitimate reason articulated by Mariners

Inn is not the true reason for his discharge, but merely a pretext for unlawful retaliation. A plaintiff can establish pretext by demonstrating that the proffered reasons for the adverse employment action: (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision. *Dubey v. Stroh Brewery Co.,* 185 Mich. App. 561, 565-66 (Mich. Ct. App. 1990).

Plaintiff gives several reasons why Mariners Inn's justifications are pretext. Plaintiff says he attended the meeting during his lunch break; he took clients because he viewed the outing as a field trip, which Mariners Inn encouraged; clients attended other political events and meetings, and Mariners Inn encouraged residents to take part in the political process; Mariners Inn disregarded its progressive discipline policy and its fairness policy by firing him; and Hartz did not review the contents of Plaintiff's testimony and could not explain why Plaintiff's behavior did not warrant progressive discipline.  For these reasons, Plaintiff says a reasonable juror could find the true reason for his discharge was Conyers' threat to cut Mariners Inn's funding.

The Court declines to address all of Plaintiff pretext arguments; it is sufficient that, as discussed below, Plaintiff creates a question of fact as to whether these were the actual factors motivating the decision to terminate him.

Part of Mariners Inn's proffered reason for firing Plaintiff is that he took Mariners Inn's clients to the meeting, which was Plaintiff's personal appointment, and used Mariners Inn's van to get them there.  However, Hartz, who was the person who decided to fire Plaintiff, testified that Plaintiff was not fired because he took clients to the meeting. Hartz Dep. at 103.  Instead, Hartz specifically said the problem with Plaintiff's actions was that he was on company time while advancing his own personal agenda at

an event that involved him personally.  Essentially, Hartz said he decided to fire Plaintiff because he misused company time.  Thus, two of Mariners proffered legitimate reasons (that Plaintiff took Mariners' clients and used Mariners' van to transport them) are undermined by Hartz's testimony.  Therefore, these reasons are insufficient to justify the decision because the decision maker admits they were not the actual factors motivating the decision.

The only remaining legitimate, non-discriminatory reason advanced by Mariners Inn is that the event was Plaintiff's personal appointment which he went to on company time.  However, the parties dispute whether Plaintiff actually went during company time, or during his lunch break.  Plaintiff says he signed out of the building before he left.  He also says this was his lunch break.  He says his lunch break was one hour, and the meeting took about 45 minutes.  He says he didn't ask for time off because he expected the meeting to last for less than an hour.  Plaintiff says that, prior to this meeting, he attended to other non-business related matters during the work day, as long as he signed out first.

David Sampson, Mariners Inn's Chief Operating Officer, says signing in and out has nothing to do with whether an employee is off duty or off company time; it only means an employee is not in the building.  Sampson also says Plaintiff was paid a full day's wages, and did not ask for, nor was he given paid or unpaid time off that day.

Hartz testified that he did not know whether Plaintiff went to the meeting on his lunch break.  Hartz testified that he chose not to speak with Plaintiff before firing him to ask him any questions about his activities, including whether they were on company time.  Hartz relied entirely on the information given to him by Jenkins and Sampson, and

he did not remember either of them briefing him on what time the meeting occurred.  He said he did not check whether Plaintiff signed out.  Further, Hartz did not know whether employees were paid for their lunch breaks, whether they worked during their lunch break, or how long an employee lunch break lasted.  Additionally, Hartz said that although counselors normally get paid when they take clients on field trips, there may be times when counselors volunteer their time and are unpaid.

Plaintiff sufficiently creates a question of fact as to whether Mariners Inn's claim that he was fired for engaging in personal business on company time is pretext; it is not clear whether he was on company time or on his lunch break, or whether his lunch break was considered company time, or whether he was permitted to conduct personal appointments on his lunch break. It is also unclear whether Hartz had reason to believe that Plaintiff was on company time.

Finally, Mariners Inn says it is disingenuous for Plaintiff to argue both that he was on this lunch break and that he was taking clients on a field trip.  However, these actions are not necessarily mutually exclusive.  As Hartz said, sometimes employees volunteer their personal time to take clients to events.  While it might seem unlikely that an employee would work during his lunch break, it is not implausible.  Moreover, Plaintiff clearly testified that he signed out of work, left the building on this lunch break, went to the meeting to testify about his recall petition (which he admits was his personal business, and not on behalf of Mariners), and took a group of clients with him so that they could observe the political process as part of a field trip.  While Mariners Inn may certainly question Plaintiff's veracity at trial, this Court may not make credibility determinations when deciding a motion for summary judgment.

Taking Plaintiff's evidence as true, and in the light most favorable him, there is a genuine issue of material fact as to whether Mariners Inn's proffered reasons for terminating him were pretext.  Additionally, a reasonable juror could believe the true reason for Mariners Inn's decision was Plaintiff's effort to recall Conyers.  As Hartz indicated in his deposition, one of Mariners Inn's concerns was that Plaintiff's actions would result in a loss of funds.  Hartz testified that Plaintiff's actions placed Mariners Inn at risk because the meeting was "designed to harm somebody that had decision [power] over not only our grant but other grants." Hartz Dep. 94.  Thus, a reasonable juror could find that Mariners Inn discharged Plaintiff because it feared reprisal for to Plaintiff's protected activity.

Summary judgment is inappropriate for this claim.

### 2. City of Detroit

The City of Detroit says Plaintiff's WPA claims against it fail because the City of Detroit is not Plaintiff's employer. The Court agrees.

Plaintiff says the City of Detroit should be jointly liable with Mariners Inn for retaliating against him because the City of Detroit jointly employed him along with Mariners Inn.

Under the WPA, an employer is "a person who has 1 or more employees. Employer includes an agent of an employer and the state or a political subdivision of the state." MCL 15.361(b).  Clearly, the City of Detroit may be an employer under the WPA.

The joint employer doctrine:

is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are

employed by the other employer.  Thus the "joint employer" concept
recognizes that the business entities involved are in fact separate but that
they share or co-determine those matters governing the essential terms
and conditions of employment.

*Swallows v. Barnes and Noble Bookstores, Inc.,* 128 F.3d 990, 993 n.4 (6th Cir. 1997)

(quoting *NLRB v. Browning-Ferris Ind. of Pennsylvania, Inc.,* 691 F.2d 1117, 1123 (3d

Cir. 1983)).

It is unclear whether Michigan law supports the application of the joint employer

doctrine to the WPA.  Neither party cites to any Michigan court case which does so.

However, at least one court in this circuit indicates that it is appropriate to do so.  *See*

*Woods v. Washtenaw Hills Manor,* 2009 WL 2222629 (E.D. Mich. 2009).   Furthermore,

neither party attempts to determine whether the joint employer test created by the

Michigan courts or the standard created by the Sixth Circuit applies to this suit.  Instead,

the parties cite both standards as applicable.

In any case, the Court finds it unnecessary to resolve these issues; even

assuming the joint employer doctrine applies to WPA claims, the City does not qualify

as a joint employer under either standard.

Under Michigan law, "[t]he general characteristics of an employer are: (1) they

select and engage the employee, (2) they pay the wages, (3) they have the power of

dismissal, and (4) they have power and control over the employee's conduct." *Michigan*

*Council 25 v. Louisiana Homes, Inc.,* 192 Mich. App. 187 (1991), *vacated* 441 Mich. 883

(1992), *reinstated on remand* 203 Mich. App. 213 (1993).

The City of Detroit says it did not select or engage Plaintiff, did not pay his

wages, did not terminate him, and did not have power and control over his conduct.

Page 17 of  36

Plaintiff does not dispute that Mariners Inn recruits and hires its own employees; however, Plaintiff says the City "controls key terms and conditions of employment of Mariners Inn employees through its control over the grant process and the award of funding." Pl. Resp. Br. to City 7.  Specifically, Plaintiff says the City controls the amount of money that an organization may spend on administrative staff; that the grant money helps pay for employees; that the City conditions grant money on activities the employees will engage in, such as field trips; that the City conditions grant money on an organization's hiring policies; and that the City conditions grant money on staff meeting certain qualifications.  Plaintiff says although Mariners Inn directs employees, it is with the intent of implementing the City's policies and procedures.  Plaintiff points out that Mariners Inn would require employees to get more certifications if the City required it, and that even though the City is not involved in every employment decision Mariners Inn makes, "it could be if needed." *Id.*  Finally, Plaintiff says his own termination shows Mariners Inn even terminates employees based on the City's wishes.

Plaintiff says the City is much like the joint employer in *Louisiana Homes,* 192 Mich. App. 187.  There, the Michigan Court of Appeals found that where a direct employer is almost entirely funded by another entity that establishes mandatory operating guidelines, budget guidelines, personnel decisions and requirements, training requirements, and minimum staff qualifications, that other entity is a joint employer.

Plaintiff also relies on *American Federation of State, County and Municipal Employees, AFL CIO v. Civil Service Commission*, 1996 WL 33324117 (Mich. App. Ct. 1996).  There, the court held that, because another entity set the minimum qualifications and training requirements for employees, employees were hired, fired and disciplined

under that entity's policies and procedures, and employee wages were determined based on that entity's guidelines, that entity was a joint employer.

The City disputes Plaintiff's claims.  The City says it merely asks for Mariners Inn's budget, including administrative costs, as part of the grant application, but it does not set the budget or control how Mariners Inn spends the budget.  The City says it is not responsible for paying Mariners Inn's employees' wages, and it does not mandate how the grant money is used, as long as it is used for the purpose for which it was requested.  Although Mariners Inn may use the money to pay employees, it is not the City that pays them.  Additionally, the City says it does not condition grant money on hiring policies; it merely asks about hiring policies and employee qualifications in the grant application, and it does not set or influence the policies of Mariners Inn.

Furthermore, the City says it has no influence over field trips or staff qualifications.  It says that although the City ranks grant applicants based on a point system, and one of the bases for awarding points is having qualified staff, the City does not control qualifications or the hiring/firing process.  In sum, the City says it merely requires application information, scores applicants based on the information, and chooses to award and fund certain applicants.

The Court finds as a matter of law that the City is not Plaintiff's joint employer. Despite Plaintiff's claims, there is no evidence the City mandated or controlled any of Mariners Inn's employment policies or decisions.   Plaintiff's claims are wholly unsubstantiated and, in fact, are refuted by the evidence submitted to this Court.

For theses same reasons, the Plaintiff's claims of joint employment fail under the Sixth Circuit standard.  Taken in the light most favorable to Plaintiff, there is no genuine

issue of fact that the City was Plaintiff's joint employer.  Thus, the City of Detroit cannot be held liable under the WPA.

### 3. Monica Conyers

Under the WPA, an employer includes an agent of an employer.  However, because the Court finds the City of Detroit is not Plaintiff's joint employer, Conyers may not be held liable under the WPA under a joint employer theory.

### B. Section 1983 Claims for Violation of Plaintiff's First Amendment Rights

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"To state a cause of action under §1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or a federal statute by a person who was acting under color of state law."  *Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003).

Plaintiff alleges that he was terminated from his employment with Mariners Inn because he exercised his right to freedom of speech, his right to freedom of association, and his right to petition the government.

"Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Holzemer v. City of Memphis,* 621 F.3d 512, 523 (6th Cir. 2010) (quotes omitted).  To prove a First Amendment retaliation claim, the plaintiff must establish: "(1) he engaged in protected conduct, (2) the defendant took an

adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was taken at least in part because of the exercise of the protected conduct." *Pucci v. Nineteenth Dist. Court,* 628 F.3d 752, 767 (6th Cir. 2010). If the plaintiff establishes a prima facie case, "the burden shifts to the employer to prove, by a preponderance, that 'it would have taken the same action even in the absence of the protected conduct.'" *Graham v. City of Mentor,* 118 Fed. Appx. 27, 29 (6th Cir. 2004).

### 1. Mariners Inn

Mariners Inn says Plaintiff's § 1983 claim against it fails because Mariners Inn is a private employer not acting under color of law. Plaintiff says Mariners Inn acted in concert with a state actor, and, therefore, acted under color of law for purposes of § 1983.

"The principal inquiry in determining whether a private party's actions constitute 'state action' under the Fourteenth Amendment is whether the party's actions may be 'fairly attributable to the state.'" *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir. 1992) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). In instances where "a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983 . . . ." *Cooper v. Parrish,* 203 F.3d 937, 952 n.2 (6th Cir. 2000); *see also Memphis Tenn. Area Local v. City of Memphis,* 361 F.3d 898 (6th Cir. 2004). Therefore, Plaintiff must show that Mariners Inn and state actors conspired together to retaliate against him for exercising his First Amendment rights to proceed with his claim against Mariners Inn.

According to the Sixth Circuit:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks,* 771 F.2d 935, 943-44 (6th Cir. 1985).

"The question of whether a person was a participant in a conspiracy is a question of fact." *United States v. Murphy,* 937 F.2d 1032, 1039 (6th Cir. 1991).

Plaintiff says there is evidence that Mariners Inn conspired with the City of Detroit: (a) Plaintiff says Jenkins told him she communicated with Conyers about his attempt to recall her; (b) Hartz sent a letter to Conyers informing her that Plaintiff did not testify on behalf of Mariners Inn and that he had been disciplined for his actions; and (c) Conyers approached Plaintiff at a 14th Congressional District meeting and said "Oh, you're the one I got fired, huh."

### (a) Communication Between Conyers and Mariners Inn

Plaintiff testified he lost his job "[b]ecause Monica [Conyers] got in touch with Saunteel, or somebody at Mariners Inn, and told them I was there [at the meeting]." Pl Dep. 82.  He says when he returned to Mariners Inn after the meeting, Saunteel Jenkins called him into her office.  "She asked me to come and asked me did I just come back from a hearing at the Coleman A. Young building for a recall petition to have Monica Conyers recalled.  And I told her yes." . . . "And then she said that–she just came from in front of Monica to make payroll, so that I could get paid, and that she

Page 22 of  36

had– something– she had communicated with Monica somehow.  I don't know who

called who."  Plaintiff testified he believed Conyers contacted Jenkins based on what

Jenkins told him. Pl. Dep. 83-84.

Conyers testified she never contacted anyone at Mariners Inn regarding

Plaintiff's employment, and never demanded his termination.  Conyers Dep. 73.

Jenkins testified she never had any conversation with Conyers about Mariners

Inn or Plaintiff. Jenkins Dep. 71.

### (b) Letter from Mariners Inn

In a letter dated May 6, 2009 addressed to Conyers, Hartz wrote that Plaintiff

testified as a private citizen, Mariners Inn did not endorse his testimony, and Hartz

"acted quickly and decisively to deal with the employee's inappropriate behavior."

Hartz also wrote: "On behalf of Mariners Inn, I sincerely apologize if this event implied,

in any way that Mariners Inn supported his private testimony. Mariners Inn appreciates

the support you and your colleagues have shown us over the years, and we hope to

have your continued support in the future."  Plaintiff says this letter is a follow-up to

Conyers' communications with Mariners Inn.

### (c) Public meeting

Plaintiff testified that approximately three days after he was fired (May 9, 2009),

he attended a public meeting and both Jenkins and Conyers were present.  He says

that Jenkins saw him, and then made a phone call.  He believes Jenkins called

Conyers because less than ten minutes later Conyers arrived at the meeting.  Plaintiff

said Conyers approached Jenkins, and Jenkins pointed out Plaintiff to Conyers.

Plaintiff said Conyers approached him and said, "Oh, you're the one I got fired, huh?"

Conyers testified that her conversation with Plaintiff at the meeting went as follows: "I don't remember his exact words, but he said something to me and I turned around and I said who are you and then he said his name and then he said– before he said his name he said you know I am.  I said no, I don't know who you are, and then he said something about his name and that I got him fired or something.  I was like I don't even know you." Conyers Dep. 26.

Jenkins testified that she attended the meeting and saw Plaintiff there.  She denied calling Conyers, or pointing to Plaintiff. Jenkins Dep. 69-70.

Karl Smith, whom Plaintiff says attended the meeting with him, gave  a statement about the events and conversation between Plaintiff and Conyers.  However, the statement is unsworn. "[A] court may not consider unsworn statements when ruling on a motion for summary judgment." *Dole v. Elliott Travel and Tours, Inc.,* 942 F.2d 962, 968 (6th Cir. 1991).  To address this problem, the Plaintiff attached an affidavit from Smith swearing that he wrote the statement, but that he did not know Conyers' exact words.  However, Federal Rule of Civil Procedure Rule 56(e) states: "If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached or served with the affidavit."  The statement attached to the affidavit is neither sworn nor certified; therefore, the Court may not consider it.

### (d) Genuine Issues of Fact Preclude Summary Judgment

It is not the role of this Court on a summary judgment motion to credit the sworn testimony of one person over that of another.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inference from the facts are jury

functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Defendant gives no reason why Plaintiff's testimony should not be considered, and the Court finds none. Therefore, the Court must take Plaintiff's testimony as true.  This evidence is sufficient for a reasonable trier of fact to find that Mariners Inn and the City of Detroit conspired against Defendant in retaliation for exercising First Amendment rights.

### 2. City of Detroit

"To prevail in a §1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).  A municipality cannot be held vicariously liable under §1983 on a *respondeat superior* theory.  *Monell*, 436 U.S. at 691.

Municipal liability will only attach if "the plaintiff can establish that an officially executed policy, or the toleration of a custom . . . causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne Cnty*, 103 F.3d 495, 507 (6th Cir. 1996).  A plaintiff must show that "the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Powers v. Hamilton Cnty Public Defender Com'n*, 501 F.3d 592, 607 (6th Cir. 2007).

First, the City says that because Plaintiff claims the City was his joint employer, and because Plaintiff claims he was taking the clients on a field trip, Plaintiff's claim must fail as a matter of law.  Specifically, the City says that when a public employee is

Page 25 of  36

terminated because of speech he was engaging in as part of his duties and responsibilities, the First Amendment does not provide protection.  However, the Court did not find that the City was Plaintiff's joint employer; this argument is not applicable.

Alternatively, the City says it is not liable because Plaintiff cannot show he was discharged pursuant to any unconstitutional City policy, custom, or practice.

Plaintiff says the City can be held liable under two theories: (a) Conyers was an official policy maker who created an unconstitutional policy to retaliate against Plaintiff, and (b) the City's failure to investigate the circumstances of his termination shows the City's deliberate indifference to Plaintiff's constitutional rights.

### (a) Unconstitutional Policy

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. Cincinnati,* 475 U.S. 469, 480 (1986).  However, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official- even a policymaking official- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 482.  Whether an official has final policymaking authority depends on state law. *Id.* at 483.  Thus, "municipal liability under § 1983 attaches where- and only where- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.*

Plaintiff appears to assert that the municipal policy at issue is Conyers' alleged

threat to withhold funding from Mariners Inn unless it fires Plaintiff.  However, Conyers does not have the power to withhold funds on her own, or to promulgate a policy to do so.  Although Plaintiff argues the City Council President may exert such power over the City Council that she actually has policymaking authority, it is undisputed that actions of the City Council are ineffective unless adopted by at least a majority of the members. Thus, Conyers did not have the responsibility to establish final policy, and there is no indication that other members of the City Council acted with her to promulgate or implement the alleged policy.

### (b) Deliberate Indifference

Plaintiff also claims the City is liable because it acted with deliberate indifference to his Constitutional rights when it failed to investigate his allegations that Conyers retaliated against him.

Even if the Court assumes that Conyers violated Plaintiff's constitutional rights, and that the City was notified of this violation, yet failed to investigate it, this is insufficient for liability to attach to a municipality.  Plaintiff presents no evidence that any similar violations occurred before the alleged incident currently at issue.  "In the absence of deliberate indifference *before* a constitutional violation, a municipality may not be liable for simply failing to investigate or punish a wrongdoer *after* the violation." *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.,* 455 F.3d 690, 701 n.5 (6th Cir. 2006).

Plaintiff's § 1983 claims against the City of Detroit are dismissed.  Likewise, Plaintiff's § 1983 claims against Conyers in her official capacity fail. *See, e.g., Leach v.*

*Shelby Cnty Sheriff,* 891 F.2d 1241, 1244-45 (6th Cir. 1989).

### 3.  Monica Conyers in her individual capacity

To prove a First Amendment retaliation claim, the plaintiff must establish "(1) he engaged in protected conduct, (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was taken at least in part because of the exercise of the protected conduct."  *Pucci v. Nineteenth Dist. Court,* 628 F.3d 752, 767 (6th Cir. 2010).

Conyers claims she is entitled to qualified immunity because Plaintiff has no evidence that she violated any of his Constitutional rights.  The Court interprets this to mean that Conyers is claiming she had no role in Plaintiff's termination.

Plaintiff says Conyers influenced his employer to terminate him because she did not like the content of his speech.  As discussed above, there is sufficient evidence for a reasonable trier of fact to decide that Conyers used her office to pressure Mariners Inn to terminate Plaintiff.  Although Conyers argues at length that the Court should credit Conyers' and Jenkins' testimony over Plaintiff's, this is inappropriate on a motion for summary judgment.  Likewise, Conyers' argument that the Court should discount Plaintiff's testimony that Jenkins told him she communicated with Conyers after the meeting because Plaintiff wavered during his deposition is misplaced; the jury determines credibility of witnesses, not this Court.

The Court addresses no other issue with regard to Conyers' claim to qualified immunity because Conyers presents no other arguments. This claim will proceed.

### C. Section 1985 Claims (against Mariners Inn & the City only)

### 1. Mariners Inn

The Plaintiff must prove four elements to make out a § 1985(3) claim: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to either person or property or a deprivation of any right or privilege of a United States citizen." *Volunteer Medical Clinic, Inc. v. Operation Rescue,* 948 F.2d 218, 223 (6th Cir. 1991).   "[A] necessary element of a § 1985(3) claim is the existence of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.*

Mariners Inn says Plaintiff's § 1985 claim should be dismissed because Plaintiff does not sufficiently allege that he was a member of a protected class.  Plaintiff says it is enough to allege that Mariners Inn and the City conspired to deprive him of his Constitutional rights because of his participation in a group of citizens in favor of recalling Conyers.

In Plaintiff's Complaint, he alleges "Mariners Inn, the City of Detroit, and Monica Conyers did conspire to threaten to discriminate and in fact did discriminate against Mr. Collins for filing his petition to recall Monica Conyers and for participating in an investigation." ¶ 20.  Plaintiff alleges this violated his First Amendment rights to freedom of speech, freedom of association, and freedom to petition the government pursuant to § 1985.

The Court agrees this is sufficient to state a claim under § 1985.  Although Plaintiff does not explicitly allege that he is part of a class of persons opposed to or in

favor of recalling Conyers, it is sufficient for him to state that Defendants' conspiracy and actions were motivated by his political activities to recall Conyers.

Next, Mariners Inn says Plaintiff's § 1985 claim fails because there was no conspiracy and because Plaintiff cannot show evidence that he was the victim of class based animus.

For the reasons already stated, there is a question of fact as to whether Mariners Inn was involved in a conspiracy with the City.

Plaintiff says that he is part of a "group of citizens in favor of recalling Monica Conyers." Mariners Inn does not challenge that such a group exists. Instead, Mariners Inn says this is not a clearly defined protected class as required for § 1985 protection. The Court disagrees.

In *Conklin v. Lovely*, 834 F.2d 543 (6th Cir. 1987), the Sixth Circuit decided that § 1985(3) reaches invidious discrimination motivated by political views. The Sixth Circuit held, as it had in an earlier case, that § 1985(3) reached "clearly defined classes, such as supporters of a political candidate." *Id.* at 549 (citing *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973) (emphasis and quotes omitted).

Mariners Inn attempts to distinguish both *Cameron* and *Conklin.* Mariners Inn says that in both cases, the plaintiff was supporting a political candidate. Here, Plaintiff was not. Additionally, Mariners Inn says that *Conklin* involved a public employee. Plaintiff is a private employee.

The Court does not construe *Conklin* so narrowly that it applies only to *supporters* of political candidates. In fact, the Sixth Circuit itself says *Conklin* "hold[s] that § 1985(3) extends to animus directed against political views." *Volunteer Medical*

*Clinic, Inc. v. Operation Rescue,* 948 F.2d 218, 224 (6th Cir. 1991).  Furthermore, Mariners Inn's position is belied by the Sixth Circuit's decision in *Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir. 1975).  In *Glasson,* the plaintiff alleged police officers conspired to deprive citizens of their First Amendment rights by destroying posters containing messages critical of then President Nixon held by political demonstrators. The Court determined that plaintiff's poster was taken from her and destroyed "pursuant to a 'class-based invidiously discriminatory animus.'" *Id.* at 911.  The Court wrote: "A more invidious classification than persons who support government officials and their policies and those who are critical of them is difficult to imagine." *Id.* at 912.  The plaintiff in *Glasson* was neither a supporter of a political candidate nor a public employee.

The Court finds no reason why Plaintiff's claim that his constitutional rights were violated because he is part of a class of persons opposed to a political candidate is not cognizable under § 1985.

### 2.  City of Detroit

The City says Plaintiff's § 1985 claim fails because he did not allege he was the victim of discrimination based upon a constitutionally protected class.  For the reasons already discussed, this argument fails.

The City also says that if the Court finds the City is a joint employer of Plaintiff, his claim must fail because the Sixth Circuit has rejected the theory that members of the same entity may engage in a conspiracy under § 1985.  It is unnecessary to address this argument because the Court determined the City was not Plaintiff's joint employer.

**D.  Tortious Interference with an Advantageous Business Relationship**

**(against the City of Detroit and Monica Conyers only)**

To prove a claim of tortious interference with an advantageous business relationship, a plaintiff must show: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) damage to the plaintiff. *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan,* 217 Mich. App. 687, 698-99 (1996).  "To fulfill the third element, . . . a plaintiff must demonstrate that the defendant acted both intentionally and either improperly or without justification." *Dalley v. Dykema Gossett,* 287 Mich. App. 296, 323 (Mich. App. Ct. 2010).

### 1. City of Detroit

The City says it is immune from tort liability.

Under MCL 691.1404(1), "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."  A "[g]overnmental function is an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." MCL 691.1401(f).  Whether an activity is a governmental function must focus on the general activity and not the specific conduct at the time of the tort. *Herman v. Detroit,* 261 Mich. App. 141, 144 (2004).  Thus, a governmental agency can be vicariously liable "only when its officer, employee, or agent, acting during the course of his employment and within the scope of his authority, commits a tort while engaged in

an activity which is nongovernmental or proprietary, or which falls within a statutory

exception." *Ross v. Consumers Power Co.,* 420 Mich. 567, 625 (1984).

Plaintiff says that the City's involvement in substance abuse services is not a

governmental function.  He relies on *Lykins v. Peoples Commty Hospital,* 355 F. Supp.

52 (E.D. Mich. 1973).  In *Lykins*, the court held that the day to day operation of a

hospital was not a governmental function, because it was proprietary and did not relate

to the task of governing.  Here, however, the City is not involved in the day to day

operations of Mariners Inn.  Mariners Inn is privately operated, and only receives grant

money from the City.  The Plaintiff does not contend that distributing grant money is a

propriety or *ultra vires* non-governmental action.  Therefore, the City cannot be held

vicariously liable for the alleged torts of Conyers.

### 2.  Monica Conyers

Conyers claims that because she was the President of the Detroit City Council

during the time relevant to this suit, she is immune from tort liability. Under MCL §

691.1407(5), "A judge, a legislator, and the elective or highest appointive official of all

levels of government are immune from tort liability for injuries to persons or damages to

property if he or she is acting within the scope of his or her judicial, legislative, or

executive authority."  The Michigan Supreme Court interprets this statute to mean that

"the highest executive officials of all levels of government are absolutely immune from

all tort liability whenever they are acting within their executive authority." *American

Transmissions, Inc. v. Attorney General,* 454 Mich. 135, 139 (1997).

Plaintiff says Conyers is not entitled to immunity because causing his termination

was not within the scope of her authority.  The Court agrees.  Conyers does not point to any grant of authority which vests her with the power to cause the termination of private employees because they present political opposition.  Immunity is an affirmative defense, and Conyers bears the burden to show that she is entitled to it.  She fails to do so.

Instead, Conyers argues Plaintiff has no evidence she interfered with or caused a breach of Plaintiff's employment relationship.  The Court disagrees.  As discussed above, Plaintiff says Jenkins told him she communicated with Conyers before his termination, and Conyers told him at a public meeting that she got him fired.  The Court must take Plaintiff's testimony as true.  This evidence is sufficient for a reasonable trier of fact to find that Conyers intentionally interfered with Plaintiff's employment relationship.

### E.  Wrongful Termination in Violation of Public Policy

Plaintiff claims he was terminated in violation of the public policy of Michigan. However, Michigan courts hold that "[t]he existence of the specific prohibition against retaliatory discharge in the WPA is determinative of the viability of a public policy claim." *Dudewicz v. Norris-Schmid, Inc.,* 443 Mich. 68, 79 (1993) (overruled on other grounds *Brown v. Mayer of Detroit,* 478 Mich. 589 (Mich. 2007)).  "It is well settled that because the WPA represents Michigan's public policy against discharge for reporting suspected violations of law to a public body, any public policy claim of wrongful discharge arising from such activity is preempted by the WPA." *Hall v. Consumers Energy Co.,* 2006 WL 1479911 *2 (Mich. Ct. App. May 30, 2006) (citing *Dudewicz,* 443 Mich. at 78-79).

Therefore, Plaintiff's public policy claims are dismissed.

**V.     Conclusion**

Based on the foregoing:

(1)      Plaintiff's WPA claim against Mariners Inn will proceed to trial;

(2)      Plaintiff's WPA claims against the City of Detroit and Monica Conyers are
dismissed;

(3)      Plaintiff's § 1983 claim against Mariners Inn and Monica Conyers will
proceed to trial;

(4)      Plaintiff's § 1983 claim against the City of Detroit is dismissed;

(5)      Plaintiff's § 1985 claims against Mariners Inn and the City of Detroit will
proceed to trial;

(6)      Plaintiff's tortious interference with a business expectancy claim against
the City of Detroit is dismissed;

(7)      Plaintiff's tortious interference with a business expectancy claim against
Monica Conyers will proceed to trial; and

(8)      Plaintiff's wrongful termination in violation of public policy claims against
Mariners Inn, the City of Detroit, and Monica Conyers are dismissed.

**IT IS ORDERED.**

  _/s/ Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated:  May 18, 2011

Page 35 of  36

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 18, 2011.

s/Linda Vertriest
Deputy Clerk